IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:00cr72

ERSKINE LARUE HARTWELL

**MEMORANDUM OPINION**

This matter is before the Court on the DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT [sic] SECTION 603(b) OF THE FIRST STEP ACT OF 2018 (ECF Nos. 125 (redacted) and 126-1 (sealed));[1] United States' Response Opposing Compassionate Release (ECF No. 134), DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS COMPASSIONATE RELEASE MOTION (ECF No. 143), and DEFENDANT'S SUPPLEMENT TO HIS COMPASSIONATE RELEASE MOTION (ECF No. 144). For the reasons set forth below, the DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT [sic] SECTION 603(b) OF THE FIRST STEP ACT OF 2018 (ECF No. 126) will be denied.

**BACKGROUND FACTS**

On April 27, 2000, Erskine Larue Hartwell pled guilty to a charge of Murder for Hire, in violation of 18 U.S.C. § 1958(a) and on August 17, 2000, Hartwell was sentenced to life imprisonment which was the statutory maximum of imprisonment provided by the

---

[1] The Court will refer to the redacted version and the sealed version of the motion as ECF No. 126-1.

statute of conviction. In particular, Hartwell played a significant role in identifying a witness who was to be killed by a contract killer. After sentencing, Hartwell began to cooperate in order to secure a reduction of his sentence. However, he withheld information about certain homicides in which he had been involved and he falsely claimed that he committed perjury during the trial of a defendant in the District of Maryland. He also falsely asserted that the prosecutor in the case before this Court had promised a sentence reduction that would yield a total sentence of eighteen years.[2]

Hartwell submitted a request for compassionate release to the Warden at his facility of confinement, FCI Marianna. In that request, Hartwell sought compassionate release solely on the basis of health risks presented by COVID-19 (ECF No. 137-1). In the present motion (ECF No. 126-1), Hartwell does not assert any medical reasons in support of his claim for compassionate release. Instead, he seeks compassionate release based on the assertions that: (1) he played a limited role in the offense of conviction; (2) his sentence is disproportionately long when compared with the

---

[2] For those reasons, as more fully stated previously in a published opinion, the Court granted the Government's motion to withdraw its previously filed motion for sentence reduction. United States v. Hartwell, 302 F. Supp.2d 609 (E.D. Va. 2004). That decision was affirmed on appeal in United States v. Hartwell, 448 F.3d 707 (4th Cir. 2006), cert. denied, 549 U.S. 938 (2006).

2

sentences imposed on his associates and co-defendants; and (3) his exemplary record over the course of his incarceration. He also tries to explain why he was not able to testify against the former conspirator and others.[3] It is those four things that he now contends are extraordinary and compelling reasons to warrant reduction of his sentence.

## DISCUSSION

The Government raises as a threshold issue whether Hartwell exhausted his remedies as required by 18 U.S.C. § 3582(c)(1)(A). That statutory threshold requirement is "non-jurisdictional and thus subject to waiver." United States v. Muhammad, 16 F.4th, 126, 129 (4th Cir. 2021). However, in this instance, unlike in Muhammad, the United States has not waived this threshold requirement.

As explained by the Fourth Circuit in Muhammad, § 3582(c)(1)(A) does contain a requirement that a defendant initially request the Bureau of Prisons to bring a motion for compassionate release on his behalf. After that, however, at least in our circuit, the defendant is entitled to file a motion with

---

[3] Hartwell's argument on this score is hard to discern, but it appears as if he acknowledges that the "inability" to testify against others was because of the way he conducted himself in making untruthful statements. That, of course, affects whether the Government could rely on Hartwell as a witness. Hartwell does not say otherwise. Instead, he emphasizes that he was prepared to testify.

3

the Court either after he fully exhausts administrative rights to appeal or after the lapse of thirty days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier. Although the exhaustion requirements specified by the statute are non-jurisdictional claims processing rules, they are nonetheless mandatory and must be enforced when properly invoked.[4]

Applicable BOP regulations specify that an inmate such as Hartwell must set out detailed extraordinary and compelling circumstances that warrant the requested compassionate release. 28 C.F.R. § 571.61(a)(1). "The purpose of this requirement is to allow BOP an opportunity to evaluate issues before they are brought to federal court." United States v. Link, 841 F. App'x 1013, 1014-15 (7th Cir. 2021). And, as the Third Circuit explained in United States v. Raia, 954 F.3d at 596, the statute itself actually contemplates the same because it grants the BOP thirty days to make an assessment on the grounds on which release is sought before a defendant can file a motion on his own.

In United States v. Williams, 987 F.3d 700 (7th Cir. 2021), the Seventh Circuit was confronted with much the same facts as

---

[4] See United States v. Keller, 2 F.4th 1278, 1282 (9th Cir. 2021) (per curiam); United States v. Houck, 2 F.4th 1082, 1084 (8th Cir. 2021); United States v. Sanford, 986 F.3d 779, 782 (7th Cir. 2021); United States v. Franco, 973 F.3d 465, 467-68 (5th Cir. 2020); United States v. Alam, 960 F.3d 831, 832-33 (6th Cir. 2020); United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020).

presented here.  In Williams, a defendant raised one ground for release in his filing with the Warden and asserted entirely different grounds in his filing with the Court.  In assessing the Government's exhaustion argument in Williams, the Seventh Circuit explained that:

> The problem is that in his counseled motion, Williams sought compassionate release based on on the risk of COVID-19, but he never asked the Bureau to seek his release on that ground. Instead, he asked the Bureau to seek compassionate release based on his trial judge's conduct.

United States v. Williams, 987 F.3d at 703.  The Court went on to hold:

> We have not yet occasion to consider whether in an order properly to exhaust, an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court. But now that the issue is squarely before us, we confirm that this is the rule – any contrary approach would undermine the purpose of exhaustion.

Id. (emphasis added).  Citing Williams and United States v. Reavis, 833 F. App'x 556, 558 (5th Cir. 2020), our court has subscribed to the same view.  United States v. Michael Gray, No. 1:08-cr-273, EDVA (August 10, 2021) (ECF No. 174).  And, indeed, any other approach would set at naught the exhaustion requirement specified by Congress.  The approach taken by, and the decision issued in,

5

Williams, although not controlling here, is persuasive and the Court subscribes to it and its reasoning here.

Hartwell seeks to escape the rather obvious requirement of the statute and the decision in Williams by citing district court opinions from Iowa, the Southern District of New York, Maryland and Michigan. Those cases reach a contrary conclusion to Williams on the theory that § 3582(c)(1)(A) does not explicitly require what those courts refer to as "issue exhaustion."[5] Hartwell also cites the recent decision from the Western District of Virginia, United States v. Fennell, No. 7:13-cr-59, 2021 WL 5149915 at *4 (W.D. Va. Nov. 4, 2021) which, citing the same cases, focuses on the absence of a so-called "issue exhaustion" requirement in the statute.

Those decisions did not persuade the Seventh Circuit in Williams for several reasons. To begin, as the Williams court observed, those decisions "overlook the purpose of § 3582(c)(1)(A)'s exhaustion requirement – to provide the Bureau with the information necessary to move for release on a defendant's behalf." United States v. Williams, 987 F.3d at 703. That is a

---

[5] See DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS COMPASSIONATE RELEASE MOTION (ECF No. 143, pp 3-4) citing United States v. Brown, 457 F. Supp.3d 691, 696-98 (S.D. Iowa 2020); United States v. Torres, 464 F. Supp. 3d 651, 654-57 (S.D.N.Y. 2020).

then suing in court on an unrelated ground." <u>United States v. Williams</u>, 987 F.3d at 704 (citing <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006); <u>Schillinger v. Kiley</u>, 954 F.3d 990, 995-96 (7th Cir. 2020). For those reasons, the Seventh Circuit held that:

> Because Williams never asked the Bureau to move the district court for his release based on the presence of COVID-19 at his prison and his risk of infection, his counsel could not properly file a motion for compassionate release on that basis.

<u>Id.</u>  The same result obtains here.

In what amounts to a <u>de facto</u> recognition of the validity of the Government's argument and the decisions in <u>Williams</u> and <u>Gray</u>, Hartwell has filed the DEFENDANT'S SUPPLEMENT TO HIS COMPASSIONATE RELEASE MOTION (ECF No. 144) in which he advises the Court that, in case the Court should be persuaded by <u>Williams</u>, he submitted a renewed request to the Warden of his facility of confinement on December 5, 2021 and specifically requested relief on the basis of "sentencing disparities between defendants and co-defendants with similar crimes and records" and the injustice of a life sentence for the conduct at issue and his substantial rehabilitation. The submission by Hartwell to the Warden is ECF No. 144-1.

Hartwell's supplement does not solve the impediment presented by the Government's exhaustion argument as to the original petition (ECF No. 126-1).  Instead, it is an acknowledgement that the Government's exhaustion argument, as to the original motion for

compassionate release (ECF No. 126) is right. And that is exactly what Hartwell should have said rather than to have taken the "belt and suspenders" approach reflected in the supplement (ECF No. 144).

## CONCLUSION

For the foregoing reasons, Hartwell did not exhaust his administrative remedies, the Government asserted the exhaustion argument, and the law fully supports it. According, the DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT [sic] SECTION 603(b) OF THE FIRST STEP ACT OF 2018 (ECF Nos. 125 (redacted) and 126-1 (sealed)) will be denied.

The denials are without prejudice to the filing of another motion if, upon reflection, counsel is so advised so to do. However, considering the filing attached to the supplement (ECF No. 144-1) and the positions taken by Hartwell in his motion and reply, any further motion must address the legislative history of the applicable statute and show how it is that Congress authorized this Court to find extraordinary and compelling circumstances on the theories asserted by counsel in perspective of the facts of this case. In that regard, the Court is aware of the decisions of the Fourth Circuit in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020); United States v. Collington, 985 F.3d 347 (4th Cir. 2021); and United States v. Lancaster, 997 F.3d 171 (4th Cir. 2021), and how those decisions found extraordinary and compelling

circumstances under the facts of those cases. But the facts of those cases do not seem to fit the facts of Hartwell's case. Finally, any subsequent motion must explain why it is that, as presented, Hartwell's request is not, in reality, a request for sentence reduction, rather that a request for compassionate release.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 15, 2022

10