IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.  Criminal No. 3:00cr72

ERSKINE LARUE HARTWELL

**MEMORANDUM OPINION**

This matter is before the Court on the DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE PURSUANT [sic] SECTION 603(b) OF THE FIRST STEP ACT OF 2018 (ECF No. 147); the United States' Response Opposing Renewed Motion for Compassionate Release (ECF No. 150); and the DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS COMPASSIONATE RELEASE MOTION (ECF No. 153). For the reasons set forth below, the DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE PURSUANT [sic] SECTION 603(b) OF THE FIRST STEP ACT OF 2018 (ECF No. 147) will be denied.

**BACKGROUND**

Erskine L. Hartwell pled guilty on April 27, 2000 to a one count Criminal Information charging him with conspiring to commit murder for hire in violation of 18 U.S.C. § 1958(a). The offense conduct is recited in the Statement of Facts accompanying the Plea Agreement and also appears in the Presentence Report (ECF No. 114, ¶ 12). Hartwell's friend and associate, Basem Najjar, was charged in federal court in Maryland with racketeering and related offenses. Najjar learned of an informant whose testimony lay at the heart of the Government's case.

Najjar hired Kevin Gray, another close associate, to kill the informant. Gray hired Oscar Veal to actually commit the killing. During a meeting in January 1999, Najjar and Gray requested Hartwell to assist in the plot to kill the informant. Hartwell's responsibility was to identify the informant for the killer. Hartwell accepted the job and identified the person he thought was the informant. Veal then killed that person. Hartwell was wrong. Veal killed the wrong person. Considering the roles played by Najjar, Gray, and Veal, the Probation Officer recommended that Hartwell receive a two level decrease in the offense level because he played "a minor role in the criminal conduct as it pertains to the offense of conviction." (ECF No. 114, ¶ 16).

The statutory sentence for the offense of conviction was mandatory life imprisonment. The guideline calculations would have provided for a confinement range of 292 to 365 months based on a total offense level of 38 and a Criminal History Category III. On August 17, 2000, Hartwell was sentenced to life imprisonment.[1]

---

[1] On January 31, 2002, Hartwell was sentenced to 360 months custody for drug related convictions in the District of Maryland. On April 1, 2003, Hartwell's sentence in that case was reduced to 240 months. And, thereafter, the sentence in Maryland was again reduced to 188 months imprisonment based on the retroactive crack cocaine amendment. The sentence in this case was set to run concurrently with the sentence in Maryland.

Najjar was tried and convicted of eighteen counts, including racketeering, tampering with witnesses and evidence, and obstruction of justice. He was sentenced in Maryland to a total of 132 months imprisonment (ECF No. 149, p. 1). Gray, who accepted the contract killing and subcontracted it to Oscar Veal, was convicted at trial of some seventy-six offenses and was sentenced to life plus a consecutive 3,300 months. Veal, who actually served as the hitman and committed the murder, pled guilty and received a sentence of 25 years as a consequence of recommendation of the Government (ECF No. 149, p. 2).

Hartwell filed previous compassionate release motions (ECF Nos. 125 and 126-1). Both were denied for failure to exhaust remedies and without prejudice to the filing of another compassionate release motion.

In this motion for compassionate release (ECF No. 147), Hartwell predicates his request for compassionate relief on five somewhat difficult to understand grounds. First, he argues that "his life sentence is inconsistent with his culpability for the offense and his limited role he played in the offense." How that is so is not explained. Second, he argues that the life sentence constitutes an unwarranted disparity of sentence and punishment, when measured against the sentences of other actors in the offense who were more culpable and who received lower sentences. But, he

3

does not address the charges or the convictions in those cases or the sentences for those offenses with his sentence. Third, he argues that, if the Guidelines applied as of today, the Guidelines would be a far lower sentence than the mandatory life sentence imposed for the offense. He does not explain why that is relevant, given that the sentence today is a mandatory life sentence. Fourth, he argues that he has demonstrated substantial responsibility "as a model prisoner, with significant programming and steady prison employment through his 22 years of federal prison time." (ECF No. 147, pp. 13-15). Finally, Hartwell argues that the factors under 18 U.S.C. § 3553(a) which, but for the mandatory minimum sentence of life imprisonment, would have produced a lower guideline range augur in favor of granting his motion for compassionate release. Again, the "why of it" is lacking.

The United States agrees that Hartwell has satisfied the applicable exhaustion requirements. However, the United States opposes Hartwell's motion for compassionate release for a number of reasons.

First, the Government rightly argues that the murder for hire scheme had, as its object, the killing of a witness which strikes at the heart of the justice system and therefore constitutes one of the most serious of all offenses, as Congress has recognized by imposing a mandatory life sentence. Second, in response to

4

Hartwell's claim that he was remorseful and that that remorse was evidenced by his cooperation, the Government argues that Hartwell sought to undermine the justice system in another way by withholding information about other homicides in which he was involved and by falsely claiming that he had committed perjury during the trial of another in the District of Maryland. Third, says the Government, when Hartwell was caught in those lies, he lied yet again by falsely claiming that the prosecutor in this case had promised him a sentence reduction that would result in a 18-year sentence. Hartwell since has admitted that he made false statements in the Maryland case and that he lied when he claimed the prosecutor in this case promised him a 18-year sentence.[2] Fourth, the Government explains that there is no sentencing disparity because of Hartwell's offense conduct and lies, all of which strikes at the heart of the justice system. But the Government does not explain how all of that should be considered in this motion.

---

[2] Because of Hartwell's continuing efforts to subvert the justice system, his request for a sentence reduction was denied in United States v. Hartwell, 302 F. Supp.2d 609 (E.D. Va. 2004), aff'd United States v. Hartwell, 448 F.3d 707 (4th Cir., cert. denied, 549 U.S. 938 (2006).

**DISCUSSION**

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3d 78, 785 (W.D. Miss. 2019).

When considering a motion for compassionate release under Section 603 in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit held that "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (citation omitted). And, in McCoy, the Court of Appeals approved decisions of the district court that took into account gross disparities between sentences and sentences that Congress now believe appropriate, the severity of the sentence, and the disparity between sentences of defendants. The Court of Appeals also authorized consideration the sheer length of a sentence, i.e. its severity as well as institutional rehabilitation.

6

More recently, the Supreme Court of the United States, in a somewhat different context, given further instruction to district courts when considering the modification of sentences. In Concepcion v. United States, 142 S. Ct. 2389 (2022), the Supreme Court of the United States considered the applicability of Section 603's sister statute in Section 404 of the First Step Act. The Supreme Court's discussion there is instructive respecting the interpretation to be accorded motions for compassionate release under Section 603. For example, Concepcion begins with the observation that: "[t]here is a longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her 'as an individual.'" Concepcion, 142 S. Ct. at 2395 (citing Koon v. United States, 518 U.S. 1881 (1996)). That observation was followed by another significant instruction: "[w]hen a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction." Concepcion, 142 S. Ct at 2396 (citing Pepper v. United States, 562 U.S. 5476 (2011) (emphasis added)). Then, the Supreme Court turned to resentencings stating that: "[s]imilarly, when a defendant's sentence is set aside on appeal, the district court at resentencing can and in may cases must consider the defendant's conduct and

7

changes in the Federal Sentencing Guidelines since the original sentencing." Id.

With that background in mind, the Supreme Court specified the issue in the case: "whether a district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act Motion." Id. The Court held that the answer to the question was yes.

Although Concepcion involved a motion filed under Section 404 of the First Step Act, there is no logical or legal reason not to apply its foundational principles when considering whether to grant a motion for compassionate release under Section 603 and, if so, how much, if at all, to reduce a sentence, if immediate release is not an appropriate remedy. That is fully consistent with the holding in McCoy which allows consideration of disparity and length of sentence as well as changes in the Guidelines and changes in law that post-date the original sentencing. In sum, based on the decision in McCoy and the teaching of Concepcion, the grounds asserted by Hartwell can be considered in deciding whether it is appropriate to grant his motion for compassionate release.

The application of the foregoing basic principles is made difficult by the rather confusing briefs. First, as explained

8

above, Hartwell's five arguments are conclusory. Second, the response of the United States does not address the five issues presented by Hartwell (ECF No. 147, p. 3) in any coherent way and the defendant's reply does not effectively address the arguments of the United States but makes general arguments instead tied to United States v. McCoy.

Further, the position of the Government suggests that compassionate release is not appropriate where a mandatory life sentence is imposed. The defendant did address that issue in his reply brief. But, the fact of the matter, is that the Fourth Circuit has not addressed this issue (see United States v. Bethea, 841 Fed. App'x 544 n.13 (2021)).

However, in Bethea, the Court of Appeals noted "that under the current version of the statute, compassionate release can be considered 'in any case' in which a prisoner satisfies certain conditions." That terse, superficial observation does not explain how a court can set aside the command of Congress. Neither the Government nor Hartwell explain how that can be accomplished. If the United States is in fact making the argument that the presence of a mandatory minimum sentence of life forecloses compassionate relief, then the argument must be made in a straightforward fashion brief that way. It is not.

9

As a consequence of the foregoing, the renewed motion is not in a posture to be decided at this time. Nor has the Government adequately addressed Hartwell's disparity and other arguments.

Accordingly, the three pleadings under consideration do not allow for effective assessment of Hartwell's motion. (ECF Nos. 147, 150, and 153). Therefore, the defendant is afforded leave to file a replacement renewed motion which is self-contained and does not refer to or incorporate other pleadings and in which he discusses (in separate headings) each of the points that he believes constitute extraordinary and compelling circumstances. For example, when discussing disparities, the disparities must be specifically identified by defendant (and mindful of that defendant's offense(s) of conviction) and then compared to the defendant's sentence. The Government shall file its response and may make such arguments as it wishes to make but, at a minimum, must address each of the defendant's five arguments (set for in ECF No. 147, p. 3) and the mandatory life sentence issue.

Then the Court will be in a position to determine the motion.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 11, 2023